**UNITED STATES DISTRICT COURT**

**DISTRICT OF ALASKA**

| | |
|---|---|
| MARY A.  MILLER, ) | |
| ) | |
| Plaintiff, ) | 1:16-CV-00002 JWS |
| ) | |
| vs. ) | **ORDER AND OPINION** |
| ) | |
| RYAN ZINKE, Secretary for the ) | **[Re: Motion at docket 37]** |
| DEPARTMENT OF THE INTERIOR, ) | |
| ) | |
| Defendant. ) | |

## I.  MOTION PRESENTED

At docket 37, Defendant Ryan Zinke, Secretary of the Department of the Interior (Defendant), moves for summary judgment as to the federal employment discrimination lawsuit filed pursuant to 42 U.S.C. § 2000e-16(a) by Plaintiff Mary A. Miller (Miller). Miller opposes the motion at docket 45.  Defendant replies at docket 46.  Oral argument was not requested.

## II.  BACKGROUND

Miller is a lifelong resident of Sitka, Alaska and is an Alaska Native.  In March of 2008 she was hired by the National Park Service (NPS or Agency) to be the

Superintendent of Sitka National Historical Park (SNHP) in Sitka, Alaska. The position was graded at GS-13. In October of 2008 and in October of 2009, Miller received positive performance reviews, with her supervisors rating her performance as fully successful. In early 2010, however, NPS Alaska Regional Director Sue Masica (Masica) and NPS Alaska Regional Deputy Director Victor Knox (Knox) informed Miller that a management review of SNHP was planned. The Director for the NPS Pacific West Region, Frank Hays, led the review in February of 2010. The review was followed by a recommendation that Miller be reassigned from her supervisory position at SNHP to an Alaska Native liaison position in Anchorage. At that time, the position had not yet been created, but it had been discussed as a potential NPS position as early as 2009. In March, shortly after Hays's review, NPS management finished the liaison job description, making the classification correct for Miller's reassignment by editing the work description so that it would qualify as a Grade GS-13 position.

On April 27, 2010, Knox offered Miller a voluntary reassignment to the new Alaska Native liaison position, which would be located in Anchorage rather than Sitka. Miller declined, and Knox then provided Miller with a memorandum directing her reassignment. It advised her that she had ten days to consider the reassignment and that if she declined the position "removal procedures will be taken." Knox later agreed to extend the deadline for Miller to accept her reassignment until May 14, 2010.

Miller declined the reassignment on May 14, 2010. On May 19, Knox issued Miller a notice of proposed removal based on her failure to accept a management-directed reassignment. Miller responded to the proposal by attempting to negotiate the

-2-

reassignment, but the removal was finalized by Masica on July 26, 2010, with an effective date of August 6, 2010.

Miller pursued a mixed-case administrative action to challenge the removal. A mixed-case action is one where a federal employee challenges an adverse employment action that can be reviewed by the Merit Systems Protection Board (MSPB) under the Civil Service Reform Act (CSRA) and also argues that the action was discriminatory.[1] Under the governing regulations, Miller, as a federal employee, had two options for having a mixed-case action reviewed: 1) she could file an EEO mixed-case complaint with the agency, alleging employment discrimination that was "related to or stemming from" a personnel action that can be reviewed by the MSPB or 2) she could skip the agency process and file a mixed-case appeal with the MSPB, alleging that the action "was effected, in whole or in part, because of discrimination."[2] Miller opted to file an EEO complaint with the agency presumably because, in addition to challenging her removal, she wanted to challenge other acts of discrimination not related to the removal and therefore not within the MSPB board jurisdiction. As to her removal, an action within the MSPB board's jurisdiction, she argued that it was based on her refusal to accept a discriminatory reassignment. After there was no decision from the agency within 120 days, in accordance with the applicable regulations,[3] she opted to forego the agency review of the removal and filed a mixed-case appeal with the MSPB to

---

[1] *Kloeckner v. Solis*, 568 U.S. 41, 44-45 (2012).

[2] *Id.* at 45; *see also* 29 C.F.R. § 1614.302(a); 5 C.F.R. § 1201.154.

[3] 5 C.F.R. § 1201.154(b)(2); 29 C.F.R. § 1614.302(d)(1)(i).

-3-

challenge the propriety of the removal under the CSRA and to allege that the removal

was effected by race, gender, and disability discrimination.  Ultimately, the removal was

affirmed at the administrative level.

Miller then filed a complaint in this court as provided for in the applicable statutes

and regulations.  In her complaint, she does not challenge the MSPB's decision as to

the propriety of her removal under the Civil Service Reform Act, which would have been

subject to a deferential review on the administrative record.[4]  She does, however,

challenge the MSPB decision as to her assertion that the removal was based on

discrimination and seeks a trial de novo on the issue.[5]  Specifically, she brings two

claims under 42 U.S.C. § 2000e-16(a): (1) Defendant "intentionally and unlawfully

removed [her] from her position as SNHP Superintendent because of her gender, in

violation of Title VII of the Civil Rights Act of 1964" and (2) Defendant "intentionally and

unlawfully removed [her] from her position as SNHP Superintendent because of her

race, in violation of Title VII of the Civil Rights Act."[6]

Defendant filed this motion for summary judgment.  In the motion, Defendant

argues that under Title VII case law, Miller's claims actually challenge two discrete

agency actions: the management-directed reassignment and the removal.  It asserts

that Miller opted to challenge her reassignment and removal with the agency through

the EEO complaint process and therefore had to comply with all deadlines set forth in

---

[4]*Washington v. Garrett*, 10 F.3d 1421, 1428 (9th Cir. 1993); 5 U.S.C. § 7703(c).

[5]*Id.*

[6]Doc. 17 at pp. 6-7.

the EEOC regulations.  It asserts that Miller did not timely pursue informal review of the first discrete act—the reassignment— with the agency; therefore, Defendant argues that any claim relying on discriminatory reassignment is now time-barred in this court. As to Miller's claim that her removal itself was discriminatory, Defendant argues that Miller has no viable claim because she cannot "bootstrap" her untimely claim regarding her reassignment to her termination.  That is, Defendant asserts that the allegedly discriminatory nature of the reassignment cannot form the basis of her claim that her removal from NPS service was based on racial discrimination.  It also contends she does not have sufficient evidence of discrimination to withstand summary judgment.

The court notes that both parties only discuss Miller's claim based on race. There is nothing in Defendant's summary judgment motion discussing her gender discrimination claim.  Indeed, in her response brief, Miller describes her complaint as alleging only that she was intentionally and unlawfully removed from her position with NPS because of her race.[7]  For this reason, the court concludes that Miller has abandoned her gender discrimination claim and will only address the race-related claim.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8]  The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

---

[7]Doc. 45 at p. 7.

[8]Fed. R. Civ. P. 56(a).

judgment."[9]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10]  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[11]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[12]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[13]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[14]  All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[15]  However, the non-moving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual

---

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[10]*Id.*

[11]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[12]*Id.* at 323.

[13]*Id.* at 323-25.

[14]*Anderson,* 477 U.S. at 248-49.

[15]*Id.* at 255.

dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[16]

## IV. DISCUSSION

### A. Timeliness

Title VII claims brought by federal employees are subject to administrative exhaustion requirements and time limitations.[17]  The Civil Service Reform Act (CSRA) provides the framework for the administrative review of personnel actions taken against federal employees.  "If (but only if) the [personnel] action is particularly serious—involving, for example, a removal from employment or a reduction in grade or pay—the affected employee has a right to appeal the agency's decision to the MSPB."[18]  The appeal can simply challenge the propriety of the action under the CSRA, but it can also challenge the action as discriminatory in violation of other federal statutes, such as Title VII.[19]  When an employee challenges a personnel action that is serious enough to fall within the MSPB's jurisdiction and alleges that the action was related to discrimination or effected in whole or in part because of discrimination, she has brought a mixed case.[20]  Miller's attempt to challenge her removal for refusal to accept the

---

[16]*Id.* at 248-49.

[17]*Brown v.  Gen. Servs. Admin.*, 425 U.S. 820, 829-33 (1976) (discussing § 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and noting that it proscribes federal employment discrimination and establishes an administrative and judicial enforcement system).

[18]*Kloeckner v. Solis*, 568 U.S. 41, 44 (2012).

[19]*Id.*

[20]*See* 29 C.F.R. § 1614.302(a); 5 C.F.R. § 1201.154

-7-

reassignment has an eight-year procedural history of being administratively reviewed as a mixed case.

A federal employee bringing a mixed case has options as to how to have her case reviewed. "She may first file a discrimination complaint with the agency itself, much as an employee challenging a personnel practice not appealable to the MSPB could do."[21] In such a situation, the EEOC's procedures for challenging discriminatory agency action apply.[22] Those procedures are set forth in 29 C.F.R. §§ 1614.101-110 and include the requirement that the employee engage in pre-complaint processing.[23] The employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."[24] After that, the formal complaint and investigation process can begin. If the agency finds no discrimination, the employee may appeal to the MSPB or forego further administrative review and sue the agency for discrimination in district court.[25] "Alternatively, the employee may initiate the process by bringing her case directly to the MSPB, forgoing the agency's own system of evaluating discrimination charges."[26] If the MSPB affirms the action, the employee can seek

---

[21]*Kloeckner*, 568 U.S. at 45.

[22]29 C.F.R. § 1614.302(d).

[23]29 C.F.R. § 1614.105(a)(1).

[24]*Kloeckner*, 568 U.S. at 45.

[25]*Id.*

[26]*Id.*

additional administrative review with the EEOC or can seek judicial review in district court.[27]

Here, as noted above, Miller initially filed a mixed-case EEO complaint with the Agency rather than a mixed-case appeal with the MSPB. She did so on August 30, 2010, and alleged, among other things not relevant here, that her removal from NPS employment, effective August 6, 2010, was based on her refusal to accept a reassignment that was determined by her race. By the time she had filed the EEO complaint, she had already gone through the informal counseling option, knowing that her proposed termination had already happened and was being reviewed by upper management. The complaint was processed and investigated. However, no decision was issued within 120 days. Under the applicable regulations, she was therefore allowed to switch over to the alternative MSPB mixed case option.[28] In her mixed-case appeal, she challenged the propriety of the removal under the CSRA and alleged that it was based on her failure to accept the discriminatory reassignment. Years later, after a hearing with and decision by an administrative law judge and appeals to the MSPB and the Federal Circuit, Miller's removal was ultimately upheld as proper.

She then filed the current discrimination lawsuit, challenging as discriminatory her removal for failure to accept the reassignment.[29] Defendant argues that in this de

---

[27]*Id.*

[28]29 C.F.R. § 1614.302(d)(i); 5 C.F.R. § 1201.154(b)(2).

[29]To the extent Defendant asserts that Miller is expressly pursuing a stand-alone challenge to the reassignment and a stand-alone challenge to her removal, the court disagrees. Her complaint challenges the removal but argues that it was discriminatory because it was based on her failure to accept a discriminatory reassignment.

novo Title VII case the removal and the reassignment are distinct agency actions and must be reviewed as such. Therefore, Defendant argues that Miller must demonstrate timely administrative review of both actions. In support, it relies on *National R.R. Passenger Corp. v. Morgan*.[30] In *Morgan*, the Supreme Court held that discrete discriminatory acts—such as termination and denial of transfer—are not actionable if time barred, even when they are related to acts alleged in timely filed charges.

If the court were to look only at the reassignment, the record supports a finding that Miller did not timely pursue administrative review of that action. A reassignment alone is not an agency action that the MSPB can review. Therefore, to challenge the reassignment apart from the removal, Miller would have had to follow the procedures set forth in the EEOC regulations, and, as noted above, those regulations require that a federal employee seek informal counseling within 45 days of the effective date of the challenged personnel action. Miller first sought informal counseling on June 29, 2010.[31] Therefore, she can not challenge actions that took effect before May 15, 2010. There is some question as to when exactly the reassignment took effect, but based on the record provided, by May 5, 2010, when the new superintendent had started at SNHP, Miller's reassignment from SNHP had taken effect.

---

[30]536 U.S. 101 (2002).

[31]The court recognizes that Miller appears to dispute the date of first contact and alleges that the first contact was made June 28, 2010. However, her sworn deposition states that she met with the counselor on June 29, 2010. That date is confirmed by the administrative record. Miller points to an email she wrote that says she made contact with the counselor on June 28, 2010, but there is no supporting documentation on the record to contradict her sworn testimony. In any event, the court finds that the one-day difference is not determinative here.

-10-

The court, however, does not agree that *Morgan* requires the court to consider Miller's challenge to her removal for failure to accept a discriminatory reassignment as untimely because of her failure to challenge the reassignment separately at the administrative level. Unlike the situation in *Morgan*, Miller was a federal employee and filed her Title VII claim pursuant to 42 U.S.C. § 2000e-16 after an eight-year administrative process that followed the mixed-case procedural regulations. As noted by the Supreme Court, "[t]he CSRA and regulations of the MSPB and [EEOC] set out special procedures to govern such a case—different from those used when the employee either challenges a serious personnel action under the CSRA alone or attacks a less serious action as discriminatory."[32] Those special procedures allow a federal employee to challenge a more serious personnel action, like termination, as a mixed-case if it is "related to" employment discrimination or "effected, in whole or in part, because of discrimination" or if the challenge "rais[es] issues of prohibited discrimination in connection with a matter otherwise appealable to the [MSPB]."[33] That is to say, the regulations allowed Miller to challenge her removal as inextricably linked to her allegedly discriminatory reassignment. The court is hard-pressed to conclude that her challenge to the removal based upon circumstances involving the reassignment, while proper and timely under the regulations, is untimely for purposes of this Title VII action.

---

[32]*Kloeckner*, 568 U.S. at 44-45.

[33]29 C.F.R. § 1614.302(a)(1), (2); 5 C.F.R. § 1201.154.

-11-

Defendant acknowledges that Miller's case was processed as a mixed-case action, but believes that is of no consequence because even under the mixed case regulations, Miller was untimely. It asserts that Miller opted to challenge her mixed-case complaint through the EEO complaint process, not the MSPB appeal process, and therefore had to comply with the deadlines set forth in the federal employee EEOC regulations. Those regulations require informal counseling within 45 days of the effective date of the allegedly discriminatory action. It then argues that the clock started running on the effective date of the first discrete act, which was the reassignment, not the removal. As discussed above, she did not contact the counselor within 45 days of the reassignment. However, Defendant provides no authority to suggest that when an employee has a mixed case—that is, one seeking review of a serious agency action that raises issues of discrimination—and the discrimination allegation is premised on and inextricably linked to an earlier personnel action, the clock starts to run at the time of the first discriminatory action, even if that is action is not reviewable by the MSPB. The removal is the action that triggered the application of the mixed-case regulations. It is the effective date of the removal that governs. Here, the effective date of the removal was August 6, 2010, and as of that date Miller had already started the informal counseling process.

Moreover, the court notes that while Miller initially sought review through the EEO mixed-case complaint process, she exercised her option to switch over to the MSPB mixed-case appeal route when the Agency did not issue a final decision within

120 days.  The MSPB then treated her mixed-case appeal as if she had originally filed with it.  There was no question as to her timeliness under the regulations.[34]

Further buttressing the court's conclusion that Miller timely initiated the review process as to her claim of discrimination is the issue of waiver.[35]  Miller did not raise the issue of waiver in her opposition, but Defendant noted in its reply brief that the Agency did not waive the timeliness issue simply because it accepted and investigated Miller's complaint, even after eight years of administrative review.  Indeed, in *Boyd v. United States Postal Service*,[36] the Ninth Circuit held that "[t]he mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation does not result in an administrative finding of discrimination."[37]

The administrative record in this case is more complicated and does not fit neatly within the confines of *Boyd*.  The agency accepted Miller's complaint and investigated it.  However, it failed to issue a final decision within 120 days, and Miller opted to forego waiting for the decision and instead filed a mixed-case appeal with the MSPB.  An EEOC administrative judge assigned to conduct a hearing on Miller's EEO complaint

---

[34]*Cobert v. Miller*, 800 F.3d 1340, 1343 (9th Cir. 2015) ("Miller timely appealed her removal to the Board.").

[35]*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (noting that although Title VII requires that plaintiffs timely exhaust administrative remedies, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling[ ]").

[36]752 F.2d 410 (9th Cir. 1985).

[37]*Id.* at 414.

acknowledged Miller's MSPB filing and therefore dismissed the EEOC case.[38]

However, the agency continued to work on the case and issued a final decision as to

her complaint on August 24, 2012.[39]  Defendant asserts that this decision was simply

resolving the other discrimination claims that were not subject to mixed-case review

with the MSPB,[40] but the decision clearly addresses Miller's discrimination claim related

to the reassignment and removal.  It sets forth her three discrimination claims: Claim 1

dealt with her reassignment and subsequent removal; Claim 2 challenged other conduct

unrelated to the removal; Claim 3 involved an allegation of hostile work environment.  In

the final decision, the Agency acknowledges that Claim 1 makes Miller's complaint a

mixed-case one.[41] The decision specifically dismisses claims 2 and 3 as untimely

because the events challenged in those claims occurred more than 45 days before

Miller had begun her informal pre-complaint processing.[42]   The rest of the thirteen-page

decision is devoted to Claim 1.  Therefore, this situation falls outside *Boyd*.  The

Agency did not merely accept, investigate, and find no discrimination as to the

reassignment and removal.  Instead, it accepted, investigated, made findings of

untimeliness as to the other claims, but accepted and moved forward with the

reassignment/removal claim.  The Agency, by finding the other claims time-barred

---

[38]Doc. 37-29.

[39]Doc. 37-24. *Cf.* Fed. R. Civ. P. 56(c)(3) (noting that the court may consider materials in the record even if not cited by the parties).

[40]Doc. 37 at p. 8 n. 9.

[41]Doc. 37-24 at p. 1 n. 1.

[42]Doc. 37-24 at p. 3.

because the challenged events fell outside the 45-day deadline but moving forward with

the reassignment/removal claim, necessarily found that claim timely. The court also

notes that in its final decision the Agency found that Miller's "removal is inextricably

intertwined with the decision to direct her reassignment."[43] It cannot now argue that the

reassignment was a separate event that triggered the time clock on her administrative

review apart from the removal. Therefore, even if the court were to conclude that there

is a timeliness issue with the administrative review of Miller's reassignment, Defendant

has waived reliance on any such argument.

## B.    Discrimination claims

Apart from the timeliness issue, Defendant argues summary judgment is

warranted because Miller has failed to present a triable issue of fact as to her

discrimination claim. In order to survive a motion for summary judgment on a Title VII

claim that does not rely on direct evidence of discrimination, a plaintiff must present a

prima facie case of discrimination.[44]   "Establishing a prima facie case . . . creates a

presumption that the plaintiff's employer undertook the challenged employment action

because of the plaintiff's race."[45]   To meet the prima facie requirement, the plaintiff must

demonstrate that (1) she belongs to a protected class; (2) she was qualified for her

position; 3) she was subject to an adverse employment action; and 4) similarly situated

individuals were treated more favorably, or other circumstances surrounding the

---

[43]Doc. 37-24 at p. 10.

[44]*Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002).

[45]*Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

-15-

adverse employment action give rise to an inference of discrimination.[46]  Defendant

asserts that Miller has not presented evidence to demonstrate the fourth element.  Part

of Defendant's argument is that she cannot bootstrap her discriminatory removal claim

to an untimely claim of discriminatory reassignment.  As noted above, the court

concludes that there is no untimeliness issue here.  Moreover, "[t]he burden of

establishing a prima facie case of disparate treatment is not onerous. . . .  At the

summary judgment stage, 'requisite degree of proof necessary to establish a prima

facie case . . . is minimal and does not even need to rise to the level of a

preponderance of the evidence.'"[47]  The evidence here, viewed in favor of Miller,

provides enough to establish a prima facie case: the circumstances surrounding the

creation of the position to fit Miller's grade level, evidence that she may not have been

qualified for the position aside from her being Alaska Native; and her prior positive

performance reviews shortly before a management review that ended up with a

recommendation of reassignment followed quickly by a reassignment from a position of

general authority to a position limited to Alaska Native relations.

In order to rebut the presumption of discrimination, the burden then shifts to

Defendant to articulate a legitimate reason for the adverse employment action.[48]  The

parties do not dispute that Defendant has put forth a legitimate reason for Miller's

removal: her failure to accept a management-directed reassignment to a position for

---

[46]*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

[47]*Lyons*, 307 F.3d at 1112 (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994)).

[48]*Cornwell*, 439 F.3d at 1028.

-16-

which management thought Miller was qualified. Therefore, the presumption of discrimination drops away and the burden shifts back to Miller to "defeat summary judgment by satisfying the usual standard of proof required in civil rights cases under [Rule 56]."[49] That is, Miller must show that there is enough evidence in the record from which a reasonable jury could conclude by a preponderance of the evidence that Defendant had discriminatory motives when it removed Miller from NPS service. To do this, Miller must point to evidence that suggests Defendant's legitimate reason is merely pretext for discrimination. Such pretext can be shown with evidence, either direct or circumstantial, that discrimination was the real motivation behind the action, or with evidence that demonstrates the legitimate reason is not believable.[50] If relying on circumstantial evidence, that evidence must be substantial and specific.[51] However, the Ninth Circuit has noted that "[t]here is some question whether that distinction for circumstantial evidence is valid" and cautioned that the "'specific and substantial' standard 'is tempered by our observation that a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one.'"[52] The court must consider the cumulative effect of the evidence.[53]

---

[49]*Id.*

[50]*Id.*

[51]*Goodwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).

[52]*France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015) (quoting *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011)).

[53]*Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007).

There is ample evidence in the record to demonstrate that the stated reason for Miller's reassignment and removal does not reflect the full picture. Viewing the evidence in favor of Miller, it appears that management did not necessarily want Miller to fill the new Anchorage liaison position, but primarily wanted her removed from the SNHP superintendent position. The question is whether there is evidence in the record from which the jury could conclude that the removal was motivated in part by discrimination. There is evidence to support a finding that Miller was not qualified for the Alaskan Native liaison position. That evidence, coupled with the fact that she, as an Alaska Native, was moved from a position of general supervisory authority to a position dealing only with Alaskan Native interactions with NPS supports an inference of discrimination. Alone, such evidence might not be substantial enough to create an issue of fact for trial. Miller, however, also alleges that there was anti-native sentiment at SNHP, which the reassignment and removal process effectively sanctioned. In support, she relies on evidence that SNHP employees complained that she had a preference for hiring Alaska Natives and voiced those concerns to James Vaughn, the Associate Regional Director for Administration who was involved in Miller's reassignment and decision to remove.[54] Although the hiring data did not support such allegations of preferential hiring,[55] a management review of SNHP was nonetheless scheduled shortly thereafter. Vaughn testified that the management review, at least in

---

[54]Doc. 45-7 at pp. 3-4; doc. 45-16 at p. 1; Doc. 45-22 at p. 2.

[55]Doc. 45-7 at p. 4.

-18-

part, provided an opportunity to "confirm or deny what was going on" in the park.[56]

While the review was explained to Miller and announced to employees as simply a way

to gain insight into the effectiveness of park operations and to assist the park's

management team in moving forward, the findings communicated to Knox after the

review focused solely on Miller's performance and complaints about her management

style.[57] Many of the complaints noted were not discriminatory, but rather more

generally criticized her management style. However, Knox's notes regarding the

review's findings reference complaints about Miller's preferential hiring, which combined

with other evidence clearly means preferential hiring of Alaska Natives.

There is one additional piece of evidence in the record that relates to

discriminatory motives. The management review team solicited comments by SNHP

employees. Miller relies on comments made by SNHP employee Hayley Matteon. In

her comments, Matteon complained about Miller's management style in general, but

also stated as follows:

> I feel the vision and goals for the park is to give control back to the native
> Indians. . . . It is clear that the local tribes are bitter about their history and the
> Russians "taking their land[.] . . . [S]ince Mary has been on, more and more
> involvement with the local tribes is somewhat giving them their land back.
> They have more say about the park than the park employees have. . . . [M]y
> recommendation would be a superintendent that does not have such strong
> ties with local tribes.[58]

---

[56]*Id.*

[57]Doc. 45-13.

[58]Doc. 45-12 at p. 2.

Miller argues that this comment is evidence of the anti-native sentiment at the park that influenced her removal from SNHP. Defendant argues there is no evidence in the record to show that the decision makers shared the biases of Miller's SNHP subordinates. While remarks by non-decision makers are not direct evidence of pretext, these same remarks can be considered circumstantial evidence of pretext when viewed in light of facts that show the remarks were acted upon or influenced the adverse action.[59] As noted above, the record shows that there were complaints made to management about Miller's favoring and soliciting Alaska Natives for jobs. A non-routine management review was scheduled on the heels of these complaints. The management review relied on employee surveys and interviews. The reviewer told Knox about complaints related to Miller's attempt to get rid of certain staff and her possible illegal and preferential hires.[60] As a solution to the management issues raised during the review, one recommendation was that Miller be removed from her position as superintendent of SNHP.[61] Knox's notes made during his discussion with the reviewer indicate that staff would be told that their concerns were received and action would be taken.[62] The reassignment process began almost immediately thereafter. Knox and Masica both cited poor workplace relationships between Miller and her staff as an

---

[59] *See France*, 795 F.3d at 1176 ("[T]o create a genuine dispute of material fact on pretext, a speaker of discriminatory statements need not be the final decision maker of an employment decision."); *cf. Poland v. Chertoff*, 494 F.3d 1174,1182-83 (9th Cir. 2007) (noting that bias can be imputed to a decisionmaker when there is evidence that the biased subordinate influenced or was involved in the decision process).

[60] Doc. 45-13.

[61] *Id.*

[62] *Id.*

-20-

aggravating factor in their removal decision.[63]  While a close call, the court concludes

that the cumulative effect of Miller's circumstantial evidence is substantial enough that a

jury could conclude that employees' biased comments and concerns influenced the

ultimate decision to remove Miller from her post as superintendent.

Defendant argues that the same-actor inference applies here, which would place

a more onerous burden on Miller to show discrimination based on race.  Under the

same-actor inference, when the same person both hires and fires a plaintiff, and both

actions occur within a short period of time, a strong inference arises that there was no

discriminatory motive behind the adverse employment action.[64]  Here, however, the

court finds the inference to be inapplicable.  Knox was not the sole decisionmaker in

either Miller's hiring or reassignment and removal.  The evidence shows that multiple

levels of management were giving input and involved.  Indeed, Masica, who was not

involved in Miller's hiring, was the ultimate decisionmaker.  Moreover, the allegations of

discrimination are more nuanced here.  The evidence relied upon by Miller does not

create an inference that Knox harbored animus towards her because of her race, but

rather is relied on to show that NPS management wanted her removed to appease anti-

native sentiments of staff members and to address concerns that Miller was allowing

too much Alaska Native influence over management decisions in the park.  Also, the

period of time between Miller's date of hire and the decision to transfer her was just shy

of two years.

---

[63]Doc. 37-19 at p. 2; doc. 37-18 at p. 2.

[64]*Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996).

-21-

**V.  CONCLUSION**

Based on the preceding discussion, Defendant's motion at docket 37 is DENIED.

DATED this 28th day of May 2018.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT